McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 622-7711
Facsimile: (973) 622-5314
Attorneys for Plaintiff,
Michael Frungillo

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL FRUNGILLO,<br><br>              Plaintiff,<br><br>              v.<br><br>IMPERIA  ENTERTAINMENT,  INC.<br>and NEVER SUBMIT, LLC<br><br>              Defendant. | Civil Action No.<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Michael Frungillo ("Plaintiff"), by and through his attorneys, McElroy, Deutsch, Mulvaney & Carpenter, LLP, as and for his Complaint against Defendants, Imperia Entertainment, Inc. ("Imperia Entertainment") and Never Submit, LLC, alleges and says:

### THE PARTIES

1.     At all relevant times hereto, Plaintiff resided at 8 Howell Drive, West Orange, New Jersey.

2.     At all times relevant hereto, Imperia Entertainment is a corporation organized and existing by virtue of the laws of the States of Nevada and California with offices located at 190

North Canon Drive, Suite 420, Beverly Hills, California 90210. Upon information and belief, at all relevant times, Imperia Entertainment was authorized to transact business within the State of New Jersey, and, along with Never Submit, LLC, jointly holds and owns the copyright for the feature film, "Never Submit."

3.   Upon information and belief, at all times relevant hereto, Never Submit, LLC is a limited liability company organized and existing by virtue of the laws of the State of Nevada.  Upon information and belief, at all times relevant times, the managing member of Never Submit, LLC was and is Imperia Entertainment.  Upon information and belief, at all times relevant times, Never Submit, LLC was authorized to transact business within the State of New Jersey, and, along with Imperia Entertainment, jointly holds and owns the copyright for the feature film "Never Submit."

<u>JURISDICTION AND VENUE</u>

4.   The District of New Jersey has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.  Diversity of citizenship exists in this action, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.   Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claim took place in this

judicial district and this Court may properly exercise personal jurisdiction over Defendants because of their contacts with the forum.

## BACKGROUND

### A.    The Feature Film "Never Submit"

6.    Upon information and belief, Imperia Entertainment and Never Submit, LLC jointly own and hold the copyright for the feature film "Never Submit."

7.    "Never Submit" is an action-drama film about an orphaned son of a Mixed Martial Arts champion.  The son attempts to follow in his father's footsteps by fighting his way out of poverty and debt to become a Mixed Martial Arts champion.

### B.    The Loan Agreement

8.    In order to raise capital and obtain grants from the State of Missouri to film and produce "Never Submit," Defendants actively sought financing from interested lenders in this State and in other states.

9.    Defendants represented to Plaintiff that they would not spend the proceeds of his loan.  Rather, Defendants represented to Plaintiff that Defendants required a loan to demonstrate to the State of Missouri that Defendants had liquidity and cash-on-hand, which was required for Defendants to secure grants from the State of Missouri to film and produce "Never Submit."

10.  On or about March 19, 2007, based on Defendants' representations, the parties memorialized the terms of Plaintiff lending funds to Defendants pursuant to a written Loan Agreement (the "Loan Agreement").

11.  Attached hereto as Exhibit "A" is a true and accurate copy of the Loan Agreement.

12.  Pursuant to the Loan Agreement, Plaintiff, as lender, agreed to loan Imperia Entertainment, as borrower, the sum of $250,000 (the "Loan Amount"), to secure a contract and funding of the feature film "Never Submit."

13.  Pursuant to the Loan Agreement, by no later than May 18, 2007, Imperia Entertainment, as borrower, agreed to repay Plaintiff, as lender, the Loan Amount, in addition to $25,000 interest (the "Interest Amount").

14.  Pursuant to the Loan Agreement, Imperia Entertainment also agreed to pay Plaintiff two percent of the net revenues of the feature film "Never Submit."

15.  Pursuant to the Loan Agreement, net revenues from the feature film "Never Submit" are defined as all revenues earned by Imperia Entertainment for the film in any distribution market worldwide, including, but not limited to, domestic theatrical, video, television and cable, DVD and Internet sales, and international theatrical, video, television and cable, DVD and Internet sales, after the deduction of all actual costs of

production, and all actual costs expended on promotion, not including bartered advertising time.

**C.  Plaintiff Lends the Loan Amount Pursuant to the Loan Agreement**

16.  In or about March 2007, Plaintiff was instructed to wire the Loan Amount to Imperia Entertainment's Bank of America account in Beverley Hills, California.   While Plaintiff attempted to consummate and finalize the wire transfer, however, the wire was rejected by Imperia Entertainment's bank. Defendants then instructed Plaintiff to wire the Loan Amount to Never Submit, LLC's account.

17.  On or about March 30, 2007, Plaintiff, in accordance with the Loan Agreement and Defendants' instructions, consummated a wire transfer pursuant to which Plaintiff wired $250,000 to Never Submit, LLC.

**D.  Imperia Entertainment's Breach of the Loan Agreement and Plaintiff's Substantial Losses**

18.  Pursuant to the Loan Agreement, Imperia Entertainment, as borrower, was required to repay Plaintiff the Loan Amount and Interest Amount by May 18, 2007.

19.  Pursuant to the Loan Agreement, a defaulting event includes, among other things, the failure to pay Plaintiff the Loan Amount and Interest Amount within ten days after the payments become due.

20.   Pursuant to the Loan Agreement, upon the occurrence of a defaulting event as defined by the Loan Agreement, the Loan Amount and Interest Amount shall forthwith become due and payable without notice.

21.   Pursuant to the Loan Agreement, Plaintiff is entitled to, among other things, all costs, charges, expenses and any sums incurred or advanced by Plaintiff to enforce the terms of the Loan Agreement and to collect the sums due from Imperia Entertainment under the Loan Agreement including, but not limited to, attorneys' fees and disbursements.

22.   Despite repeated demands, Imperia Entertainment has failed to pay Plaintiff the Loan Amount and Interest Amount.

23.   Plaintiff has been forced to commence this action and has sustained damages because of Defendants' breach and conduct.

### COUNT I

### BREACH OF CONTRACT

24.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 23 of this Complaint as if fully set forth herein.

25.   On or about March 19, 2007, Imperia Entertainment executed and delivered to Plaintiff a Loan Agreement whereby Imperia Entertainment promised to pay Plaintiff the Loan Amount on May 18, 2007, together with the Interest Amount.

26.   In addition to the payments identified above, pursuant to the Loan Agreement, Imperia Entertainment promised to pay Plaintiff two percent of the net revenues of the feature film "Never Submit."

27.   The Loan Agreement further provides that any payment due to Plaintiff shall become due and owing by Imperia Entertainment on May 18, 2007 (sixty days from March 19, 2007).

28.   The Loan Agreement further provides that Imperia Entertainment's failure pay Plaintiff within ten days after May 18, 2007, constitutes a defaulting event for which Plaintiff may pursue legal remedies.

29.   The Loan Agreement further provides that if, as a result of Imperia Entertainment's default, litigation is commenced by Plaintiff to enforce the terms of the Loan Agreement, then Imperia Entertainment shall pay Plaintiff all costs, charges, and expenses, and any and all other sums including, but not limited to attorneys' fees and disbursements, to collect any sums due under the Loan Agreement.

30.   On or about May 29, 2007, Plaintiff informed Imperia Entertainment that it was in default of its obligations under the Loan Agreement, and demanded that it immediately pay the sums due and owing to Plaintiff under the Loan Agreement.

31.   Having   not   received   payment   from   Imperia Entertainment, on July 26, 2007, Plaintiff reiterated his demand for payment from Imperia Entertainment.

32.   To date, however, Imperia Entertainment has defaulted and breached the Loan Agreement by failing to make payments to Plaintiff.

33.   Despite having received Plaintiff's written demands for payment and notices of default, Imperia Entertainment has refused to make payments to Plaintiff pursuant to, and remains in default of, the Loan Agreement.

34.   Defendants are indebted to Plaintiff in the amount of the Loan Amount and Interest Amount, in addition to two percent of the net revenues of the feature film "Never Submit."

35.   As a direct and proximate result of the actions and conduct of Defendants, Plaintiff has suffered and continues to suffer damage.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including   prejudgment   interest,   Plaintiff's   investment   and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any

such other legal and equitable relief as the Court may deem just and proper.

## COUNT II

### PROMISSORY ESTOPPEL

36.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 35 of this Complaint as if fully set forth herein.

37.   At times relevant hereto, Plaintiff reasonably and detrimentally relied on the clear and definite promises of Imperia Entertainment with regard to paying Plaintiff.

38.   At times relevant hereto, Plaintiff reasonably and detrimentally relied on the clear and definite promises of Defendants that the Loan Amount received from Plaintiff would not be spent.

39.   Imperia Entertainment should have reasonably expected Plaintiff to detrimentally rely on Imperia Entertainment's promises and be bound by those promises.

40.   Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement, Plaintiff would not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

41.   Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement and that Defendants would disburse the Loan Amount despite representing otherwise, Plaintiff would

not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

42. Defendants have been and continue to be unjustly enriched at the expense and detriment of Plaintiff.

43. It is inequitable for Defendants to accept and retain the Loan Amount.

44. As a direct consequence of lending funds to Defendants, Plaintiff has suffered and continues to suffer damages of a definite and substantial nature.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

### COUNT III

#### BREACH OF THE DUTY OF
#### GOOD FAITH AND FAIR DEALING

45. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. The Loan Agreement includes an implied covenant of good faith and fair dealing.

47. At all times relevant hereto, Plaintiff fully and satisfactorily performed all of the conditions and duties required of him pursuant to the Loan Agreement.

48. At all times relevant hereto, Imperia Entertainment, through its acts, statements, misstatements and omissions and the acts, statements, misstatements and omissions of their employees or agents, breached the covenant of good faith and fair dealing.

49. As a result of Imperia Entertainment's breaches of the covenant of good faith and fair dealing, Plaintiff has suffered and continues to suffer damages of a definite and substantial nature.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

## COUNT IV

### INTENTIONAL MISREPRESENTATION

50. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. At all times relevant hereto, Defendants intentionally made misrepresentations and omitted material facts to Plaintiff to induce him to enter into the Loan Agreement and wire transfer the Loan Amount to Never Submit, LLC.

52. The misrepresentations and omitted material facts included the representation made in the State New Jersey on or about March 19, 2007, by the co-Executive Producer of "Never Submit" to Plaintiff that Plaintiff's loan would not be spent and would be used only to demonstrate to the State of Missouri that Defendants had the requisite liquidity and cash-on-hand so that they could secure funding in the form of grants from the State of Missouri to film and produce "Never Submit."

53. The misrepresentations and omitted material facts included the representation made in the State New Jersey on or about March 21, 2007, by the co-Executive Producer of "Never Submit" to Plaintiff that Plaintiff would not lose his money, which was made in response to Plaintiff's concerns about the Loan Agreement.

54.   After  receiving  the  Loan  Amount  from  Plaintiff, however,  Defendants  spent  the  Loan  Amount  despite  representing otherwise to Plaintiff.

55.   The  misrepresentations  and  omitted  material  facts would be material to reasonable lenders such as Plaintiff.

56.   Defendants  failed  to  make  adequate  disclosures  to Plaintiff  with  the  intent  that  Plaintiff  rely  on  such  non-disclosures to his detriment.

57.   As  evidence  of  Defendants'  omissions,  the  Loan Agreement  required  Defendants  to  repay  the  Loan  Amount  and Interest  Amount  within  sixty  days.   By  intentionally  maintaining their  silence  concerning  their  intentions  to  disburse  the  Loan Amount  received  from  Plaintiff  despite  representing  otherwise  to Plaintiff,  Defendants  had  no  intention  of  honoring  the  Loan Agreement,  had  no  intention  of  repaying  Plaintiff,  and  had  every intention  of  disbursing  the  Loan  Amount  contrary  to  their representations,  which  were  intentionally  made  to  secure Plaintiff's Loan Amount.

58.   Despite  the  material  representations  and  omissions, Defendants  disbursed  the  Loan  Amount  and  have  failed  to  pay Plaintiff pursuant to the Loan Agreement.

59.   Defendants  made  those  misrepresentations  and/or omissions with knowledge and intent that Plaintiff would rely on the  misrepresentations  and/or  omissions  to  wrongfully  induce

13

Plaintiff to loan money to Defendants for the feature film "Never Submit."

60. Plaintiff reasonably believed and relied on the misrepresentations and/or omissions made by Defendants.

61. Defendants knew or should have known that the misrepresentations and/or omissions were material to Plaintiff, and that Plaintiff would rely on the representations and/or omissions in deciding whether or not to commit funds toward the funding of the feature film "Never Submit."

62. The representations and/or omissions were knowingly false and misleading, and caused and continue to cause damage to Plaintiff.

63. Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement, Plaintiff would not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

64. Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement and that Defendants would disburse the Loan Amount despite representing otherwise, Plaintiff would not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

65. As a direct and proximate result of the actions and conduct of Defendants, Plaintiff has suffered and continues to suffer damage.

14

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

## COUNT V

### NEGLIGENT MISREPRESENTATION

66. Plaintiff repeats and realleges each and every allegations set forth in Paragraphs 1 through 65, inclusive, with the same force and effect as fully set forth herein.

67. The misrepresentations and omitted material facts included the representation made in the State New Jersey on or about March 19, 2007, by the co-Executive Producer of "Never Submit" to Plaintiff that Plaintiff's loan would not be spent and would be used only to demonstrate to the State of Missouri that Defendants had the requisite liquidity and cash-on-hand so that they could secure funding in the form of grants from the State of Missouri to film and produce "Never Submit."

68. The misrepresentations and omitted material facts included the representation made in the State New Jersey on or

about March 21, 2007, by the co-Executive Producer of "Never Submit" to Plaintiff that Plaintiff would not lose his money, which was made in response to Plaintiff's concerns about the Loan Agreement.

69.   Defendants failed to inform Plaintiff that Defendants would disburse the Loan Amount after receiving it from Plaintiff.

70.   Defendants knew or should have known that the aforementioned representations and omissions were material to Plaintiff and that Plaintiff would rely on Defendants' representations in deciding whether or not to commit funds toward the funding of the feature film "Never Submit."

71.   At the time that Defendants' made the aforementioned representations to Plaintiff, Defendants knew or should have known that Plaintiff would rely on the aforementioned representations and omissions in deciding whether or not to commit funds for maintenance fees.

72.   Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement, Plaintiff would not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

73.   Had Plaintiff known that Imperia Entertainment would not honor the Loan Agreement and that Defendants would disburse the Loan Amount despite representing otherwise, Plaintiff would

not have loaned and wire transferred the Loan Amount to Never Submit, LLC.

74.   Plaintiff reasonably relied on Defendants' negligent misrepresentations and non-disclosures and has therefore suffered and continues to suffer damages.

75.   As a direct and proximate result of Defendants' refusal to repay the Loan Amount and Interest Amount to Plaintiff, Plaintiff has suffered and continues to suffer damages of a definite and substantial nature.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

## COUNT VI

### ACCOUNTING

76.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.   Pursuant to the Loan Agreement, Imperia Entertainment agreed to pay the Loan Amount and Interest Amount to Plaintiff.

78.   Upon information and belief, Defendants have secured millions in working capital far in excess of Plaintiff's Loan Amount, yet refuse to pay Plaintiff.

79.   Pursuant to the Loan Agreement, Imperia Entertainment agreed to pay two percent of the net revenues of the feature film "Never Submit" to Plaintiff.

80.   Pursuant to the Loan Agreement, net revenues from the feature film "Never Submit" are defined as all revenues earned by Defendants for the film in any distribution market worldwide, including, but not limited to, domestic theatrical, video, television and cable, DVD and Internet sales, and international theatrical, video, television and cable, DVD and Internet sales, after the deduction of all actual costs of production, and all actual costs expended on promotion, not including bartered advertising time.

81.   Upon information and belief, Defendants have derived and will continue to derive substantial profits from the production and sale of the feature film "Never Submit."

82.   Plaintiff has no means of ascertaining how much of the Loan Amount has been disbursed, how much Defendants have secured from other sources, and how much assets Defendants possess that would permit them to pay Plaintiff in accordance with the Loan

Agreement.   Ascertaining this information can be accomplished only by a full and complete accounting of all financing and grants received by Defendants related in any way to filming and producing the feature film "Never Submit."

83.  Plaintiff has no means of ascertaining the net revenues that Defendants have derived from the feature film "Never Submit," or has in their possession.   Ascertaining the net revenues that Defendants have derived from the feature film "Never Submit" can be accomplished only by a full and complete accounting of all monies received by Defendants related in any way to the feature film "Never Submit."

84. As a direct and proximate result of Defendants' refusal to repay the Loan Amount and Interest Amount to Plaintiff, Plaintiff has suffered and continues to suffer damages of a definite and substantial nature.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

## COUNT VII

### UNJUST ENRICHMENT

85.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.   At the inception of the Loan Agreement, Plaintiff conferred a benefit to Defendants by wire transferring the Loan Amount to Never Submit, LLC, which Defendants have accepted and has retained to their benefit.

87.   Defendants represented to Plaintiff that the Loan Amount would not be disbursed, but would be used only to demonstrate liquidity and a case-on-hand balance so that they could obtain funding from the State of Missouri through grants.

88.   Despite Defendants' representations, however, Defendants have disbursed the Loan Amount.

89.   It is inequitable for Defendants to accept and retain the Loan Amount.

90.   Defendants have been and continue to be unjustly enriched to the detriment of Plaintiff.

91.   As a direct and proximate result of Defendants' refusal to repay the Loan Amount and Interest Amount to Plaintiff, Plaintiff has suffered and continues to suffer damages of a definite and substantial nature.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages, punitive damages, equitable damages, restitution, together with all accrued interest related thereto including prejudgment interest, Plaintiff's investment and interest in the total amount of $275,000, in addition to two percent of the net revenues from "Never Submit," together with pre-judgment interest, attorneys' fees, costs of suit, and any such other legal and equitable relief as the Court may deem just and proper.

McELORY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Plaintiff,
Michael Frungillo

By: _____
Thomas P. Scrivo
Ryan P. Mulvaney

Dated: January 30, 2008

21

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable.


## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

Pursuant to Local Civil Rule 11.2, I certify under penalty of perjury that the matter in controversy is not subject to any other known action pending in any court or of any pending arbitration of administrative proceeding.

> McELORY, DEUTSCH, MULVANEY &
> CARPENTER, LLP
> Attorneys for Plaintiff,
> Michael Frungillo

By: _____
Thomas P. Scrivo
Ryan P. Mulvaney

Dated: January 30, 2008

<u>**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 201.1(d)(3)**</u>

Pursuant to Local Civil Rule 201.1(d)(3), I certify under penalty of perjury that the damages recoverable in this action exceed the sum of $150,000, exclusive of costs and interest.

McELORY, DEUTSCH, MULVANEY &
CARPENTER, LLP
Attorneys for Plaintiff,
Michael Frungillo

By: _____
Thomas P. Scrivo
Ryan P. Mulvaney

Dated: January 30, 2008