**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL FRUNGILLO,

                              Plaintiff,                   Civ. No. 08-0908 (DRD)

v.                                                        **O P I N I O N**

IMPERIA ENTERTAINMENT, INC., ET
AL.

                              Defendants.

*Appearances by:*

McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
by: Ryan P. Mulvaney, Esq.
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102

         *Attorneys for Plaintiff*

GREENBAUM, ROWE, SMITH & DAVIS, LLP
by: Jane J. Felton, Esq.
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095

         *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

        This matter comes before the Court on a Motion for Summary Judgment by Defendant

Wachovia Bank, N.A. ("Wachovia" or "the bank").  Plaintiff Michael Frungillo claims that

Wachovia made an unauthorized transfer of $250,000 from his account to another Defendant, Never Submit, LLC ("NS, LLC") in violation of applicable New Jersey banking statutes and various provisions of the Uniform Commercial Code ("UCC").  Wachovia admits that it made such a transfer, but argues that (1) it was authorized to do so pursuant to an e-mail request by Mr. Frungillo – whom the bank contends had previously agreed that wire transfers could be authorized by such means – and (2) even if the transfer violated applicable banking statutes, the $250,000 did nothing more than discharge Mr. Frungillo's contractual obligation to loan that amount to another Defendant, Imperia Entertainment, Inc. ("Imperia") – NS, LLC's parent company – and he therefore suffered no damages as a result.

For the reasons set forth below, the Court agrees with the latter of the bank's arguments. Regardless of whether Wachovia violated New Jersey banking statutes or whether Mr. Frungillo had agreed that such transfers could be authorized by e-mail, it is undisputed that the transfer to NS, LLC fulfilled Mr. Frungillo's obligations to Imperia.  Therefore, he has suffered no damages.  To the contrary, it appears that this litigation is motivated by the fact that Imperia and NS, LLC allegedly breached their contract with Mr. Frungillo by failing to repay the $250,000 loan – an unfortunate circumstance that has nothing whatsoever to do with the bank's alleged violation.  Therefore, summary judgment will be granted in favor of Wachovia, and the claims asserted against the bank will be dismissed.

## I.  BACKGROUND

This litigation arises out of a contract dispute between Mr. Frungillo and Imperia.  On March 19, 2007, Mr. Frungillo agreed to provide a loan of $250,000 to Imperia in order to fund the production of "Never Submit," a feature film about the orphaned son of a mixed martial arts champion who fights his way out of poverty using the skills he learned from his father.  In

connection with the film's production, Imperia had previously created NS, LLC, which it managed and with whom it jointly owned the copyright to "Never Submit."

In order to arrange for disbursement of the loan, Mr. Frungillo visited the Verona, New Jersey branch office of Defendant Wachovia Bank, N.A. ("Wachovia") on March 22, 2007 and completed a Funds Transfer Request authorizing the bank to wire transfer $250,000 to Imperia's account. When it attempted to transfer the funds on March 28th, Wachovia was informed by the receiving bank that the transfer had been rejected because the account number on the request did not match the title on the receiving account. The following morning, a Wachovia employee informed Mr. Frungillo – who by this point was vacationing in the Bahamas, where he apparently had internet access but only intermittent phone service – via e-mail that the transfer had been rejected.

On learning that the transfer to Imperia had been rejected, Mr. Frungillo sent a reply e-mail instructing Wachovia to transfer the funds to an account held by NS, LLC.[1] Following that e-mail, the facts alleged by the parties diverge. Mr. Frungillo forcefully contends that later the same day, he telephoned Wachovia and left a voicemail instructing the bank not to carry out the transfer. Wachovia claims that it did not receive that message and has no record of the call. The following morning, March 30, 2007, Wachovia transferred $250,000 from Mr. Frungillo's account to one held by NS, LLC.

---

[1] Mr. Frungillo acknowledged in his papers relating to the pending motion that he sent Wachovia a request that the funds be transferred to NS, LLC. His contentions relating to the exact nature of that request, however, have changed somewhat throughout the course of the litigation. In his Second Amended Complaint filed on February 27, 2009, Mr. Frungillo alleged that the request was made via telephone. He did not, however, dispute the authenticity of the e-mail produced by Wachovia in connection with its Motion for Summary Judgment. To the contrary, one of Mr. Frungillo's central contentions is that the e-mail was not sufficient to authorize such transfers under the security procedures governing his account. Therefore, the Court will accept the authenticity of that e-mail for the purposes of this ruling.

## II.  DISCUSSION

As discussed above, Mr. Frungillo claims that Wachovia violated New Jersey banking statutes and the UCC by transferring funds from his account to NS, LLC on the basis of an e-mail rather than telephonic or in-person authorization.  Wachovia counters by pointing to various documents which it contends demonstrate that Mr. Frungillo had agreed that e-mail would be sufficient to authorize such transfers.  Additionally, the bank argues that Mr. Frungillo suffered no damages as a result of the transfer, because the $250,000 payment to NS, LLC discharged his contractual obligation to loan that amount to its parent company, Imperia.

The parties' contentions relating to whether Mr. Frungillo's e-mail was sufficient to authorize the transfer raise various disputes of fact, including (1) whether the security procedures governing Mr. Frungillo's account allowed for the authorization of such transfers via e-mail, and (2) whether he effectively rescinded any authorization by calling Wachovia later the same day. The unique circumstances at issue in this matter, however, make those disputes irrelevant to the ultimate disposition of the case.  As discussed below, the transfer from Mr. Frungillo's account to NS, LLC discharged his contractual obligations to Imperia.  Since he would have been obligated to make such a payment regardless of whether Wachovia had transferred the funds in a manner that allegedly violated New Jersey banking statutes, Mr. Frungillo has suffered no damages.  In the absence of damages or any allegation of ongoing violations that could be effectively redressed through injunctive relief, any judgment against Wachovia that Mr. Frungillo might achieve at trial would be an impermissible advisory ruling.  Therefore, his claims against Wachovia are moot and judgment as a matter of law is appropriate under the standard of review applicable to motions for summary judgment pursuant Federal Rule of Civil Procedure 56.

**A.  Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are no issues that require a trial, then judgment as a matter of law is appropriate.  Id. at 251-52.

**B.  Mootness**

It is axiomatic that a plaintiff's suit must be dismissed if the court is unable to provide relief beyond a declaration that past conduct by the defendant was unlawful.  "[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them."  Preiser v. Newkirk, 422 U.S. 395, 401 (1975).  Thus, "if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  Donovan ex. rel. Donovan v. Punxsutawney Area School Bd., 336 F.3d 211, 216 (3d Cir. 2003); see also In re Continental Airlines, 91 F.3d 553, 570 (3d Cir. 1996) (The mootness doctrine focuses on whether granting relief "will have some effect in the real world.") (citation omitted).

In the portion of his Second Amended Complaint relating to Wachovia, Mr. Frungillo seeks unspecified compensatory and punitive damages, along with injunctive relief.  On review of his factual allegations, however, the Court finds that Mr. Frungillo suffered no compensable damages as a result of the March 30, 2007 transfer.  It is undisputed that Mr. Frungillo had a contractual obligation to loan Imperia $250,000 in order to aid in the production of "Never Submit."  Mr. Frungillo admits in his Second Amended Complaint that Imperia "managed" NS, LLC, which it formed solely for the purpose of producing "Never Submit."  Moreover, Mr. Frungillo contends elsewhere in his Complaint that the transfer to NS, LLC discharged his contractual obligation to Imperia – a contention which Imperia has not disputed at any point during this litigation.[2]  Imperia and NS, LLC jointly owned the copyrights to "Never Submit," were both involved in the financing of that film, and were principally owned and managed by the

---

[2] Imperia and NS, LLC both failed to file an Answer to Mr. Frungillo's Second Amended Complaint.  On May 28, 2009, the Clerk of the Court entered a Default against those Defendants pursuant to Federal Rule of Civil Procedure 55(a).

same individual.  Thus, the Court agrees with Mr. Frungillo that his payment to NS, LLC was, in

effect, a payment to Imperia that discharged his obligations under the loan agreement.  Mr.

Frungillo cannot, however, have it both ways: since he has successfully contended that the

transfer fulfilled his obligations to Imperia, it follows that he suffered no damages as a result of

that transfer.  To the contrary, Wachovia's actions – regardless of whether they violated the

security procedures governing Mr. Frungillo's account – did nothing more than place Mr.

Frungillo in the position that he was obligated to assume under his contract with Imperia.

Therefore, Mr. Frungillo may not recover compensatory damages from Wachovia as a result of

the transfer.

 Moreover, Mr. Frungillo does not contend that Wachovia acted in bad faith.  Thus, an

award of punitive damages would be inappropriate.  See, e.g., Acosta v. Honda Motor Co., Ltd.,

717 F.2d 828, 834 (3d Cir. 1983) ("Punitive damages may be awarded for conduct that is

outrageous, because of the defendant's evil motive or his reckless indifference to the rights of

others.") (quoting Restatement (Second) of Torts § 908(2)); Berroyer v. Hertz, 672 F.2d 334,

340-41 (3d Cir. 1982) ("Punitive damages are not awarded for mere inadvertence, mistake, errors

of judgment and the like, which constitute ordinary negligence.") (citation omitted).  Nor does he

allege any ongoing violation of his rights that could be redressed using injunctive relief.  See,

e.g., O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does

not in itself show a present case or controversy regarding injunctive relief … if unaccompanied

by any continuing, present adverse effects."); United States v. Or. State Med. Soc., 343 U.S. 326,

333 (1952) ("The sole function of an action for injunction is to forestall future violations.").

Therefore, any judgment Mr. Frungillo might achieve against Wachovia – either at the present

stage or at trial – would be nothing more than an advisory ruling on the wrongfulness of the

bank's past conduct.  It is well-established that this Court is powerless to issue such rulings.  See, e.g., Ashcroft v. Mattis, 431 U.S. 171, 172-73 (1977); Preiser, 422 U.S. at 401.

### III.  CONCLUSION

For the foregoing reasons, Wachovia's Motion for Summary Judgment is granted, and Mr. Frungillo's claims against the bank are dismissed as moot.

The Court will enter an Order implementing this Opinion.

 **s/ Dickinson R. Debevoise_____**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 28th, 2009